Thomas J. O'Neill v. Commissioner.
O'Neill v. Commissioner
Docket No. 9728.
United States Tax Court
1947 Tax Ct. Memo LEXIS 100; 6 T.C.M. (CCH) 993; T.C.M. (RIA) 47239; August 27, 1947
*100 Gustave Simons, Esq., for the petitioner. Clay C. Holmes, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves a deficiency of $16,777.05 in income tax for 1941. The single error in the case is whether the respondent erred in treating certain advances of petitioner to corporations as resulting in long-term capital losses instead of deductible bad debts, as claimed by the petitioner in his return. Facts stipulated at the hearings are embodied in our findings from other evidence. Findings of Fact The petitioner, a resident of Avon-by-the-Sea, New Jersey, is, and has been since 1897, an attorney, and during such period he devoted nearly all of his time to his specialty of representing clients in negligence cases. He filed his return for the taxable year with the collector for the second district of New York. In 1917, the petitioner organized the 123 Locust Hill Avenue Co., Inc., hereinafter referred to as Locust, under the laws of New York, with an authorized capital stock of $2,000, all of which was issued to, and paid for by, petitioner at that time. Petitioner has at all times been president, a director *101 and sole stockholder of Locust. From time to time after the organization of Locust until the close of 1940, the petitioner advanced to it, for its account, certain sums of money. During that time Locust paid back, or caused to be paid to petitioner, other sums of money. At no time after the first advance was the net advance reduced to zero. The petitioner did not receive certificates of stock or other documentary evidence of a capital investment, or a note or other evidence of a debt, with reference to the advances, or dividends, or interest in respect thereto. There were no formal meetings of the directors of Locust with respect to the advances, nor any resolution characterizing the advances as loans or investments. On January 1, 1941, the net amount of the advances was in excess of $188,494.36. Locust was completely liquidated and dissolved in 1941. Application of the sums distributed to petitioner in liquidation to the advances reduced the amount of the advances to $188,494.36, and the petitioner was unable to make any further recoveries on his advances. The above facts, with respect to Locust, are the same in the case of 123 Hillcrest Avenue Corporation, hereinafter referred *102 to as Hillcrest, except that it was organized in 1936, with a capital stock of $1,000, and the net amount of the advances on which no recoveries could be made, after the liquidation and dissolution of the corporation in 1941, was $7,713.63. Title to real property was taken by petitioner in the name of the corporations instead of himself to obviate the necessity of obtaining his wife's signature when sales thereof were made. The corporations did not maintain bank accounts, expenses and other debts of the corporations, including amounts for the purchase of property, and advances in and after 1938 to the Barclay Holding Corporation having been paid by checks drawn on petitioner's bank account. Amounts so paid by petitioner were regarded as advances of petitioner to the corporations. Excluding bonded indebtedness and advances made by petitioner, the corporations did not borrow any money. The petitioner and the corporations did not keep regular books of accounts. Working papers of accountants and financial statements were prepared from lists of receipts and disbursements for the account of the corporations, and check books and bank statements of petitioner. Balance sheets and other *103 financial statements of the corporations listed the advances made by petitioner as loans payable. The amounts were referred to as such during conversations between petitioner and accountants employed by him. Checks received by the corporations from the sale of property were endorsed to petitioner and thereafter treated as repayments of loans. The corporations did not purchase any property after 1929. The income tax returns of Locust for 1917, 1918, 1919, 1922, and 1923 reported no gross income or deductions. The returns for 1917, 1918, and 1919 contain statements that the corporation owned and held title to the private dwelling located at 123 Locust Hill Avenue, Yonkers, New York, for the benefit of petitioner, and was being occupied by him as a dwelling; that the corporation had no income, and that petitioner paid all of the expenses of the property. The 1922 and 1923 income tax returns of Locust contain statements that it owned private dwelling houses located at 76 and 123 Locust Hill Avenue; that the corporation held the premises for the benefit of petitioner and that petitioner paid all of the expenses of the properties. The capital stock return of Locust for the fiscal year *104 ended June 30, 1920, executed by petitioner on July 16, 1919, as president and treasurer, contains a statement that petitioner was using the premises at 123 Locust Hill Avenue as a private residence and paid all of the expenses of the property and premises at 76 Locust Hill Avenue, acquired in 1918 or 1919, and that the corporation was indebted to him in the amount of $26,225. The property located at 123 Locust Hill Avenue was reported in balance sheets at a cost of $40,000. Comparative balance sheets for Locust for the year 1931 and thereafter to the time of liquidation in 1941 list a mortgage outstanding against the property in the amount of $18,000 during the years 1931 to 1936, inclusive, and at decreased amounts thereafter, and that it had an operating deficit each year. Balance sheets of Hillcrest at the close of the years 1937 to 1940, inclusive, list as its sole tangible asset one parcel of real estate at about $16,500, mortgage payable in the amount of $9,000 at the close of 1937, and $8,000 in subsequent years, and an operating deficit each year. The balance sheet of Locust at the close of 1940, as reported in its income tax return for 1940, shows assets of $286,314.64 *105 and loans payable in the amount of $264,668.22. The advances of petitioner to Locust increased from $233,631.24, the total to the close of 1931, to $267,161.15 at the time the corporation was liquidated. In his return for 1941, the petitioner claimed as bad debt deductions the amounts of $188,494.36 and $7,713.65 advanced to the corporations. The respondent disallowed the amounts as bad debt deductions and allowed one-half thereof, a total of $98,104, as a long-term capital loss, upon the ground that the advances constituted additional investments in the capital stock of the corporations. The amounts advanced to the corporations by petitioner were not loans. Opinion The amount of the loss sustained by the petitioner is not in dispute. The question is whether it is deductible as a bad debt, upon the ground that the advances were loans, as contended by petitioner, or whether it resulted from capital investments, as contended by respondent. There is testimony of petitioner that he intended the advances as loans and reports to taxing authorities listed the amounts as accounts payable, but such testimony and evidence is not controlling, the ultimate question being one of fact *106 to be decided from the peculiar facts of the case. ; , affirming ; ; . They must be weighed with other facts of record. The advances had none of the usual characteristics of commercial loans. This is conclusively shown by the fact that no evidence of indebtedness was issued; no interest was paid and there is no indication in the record that any interest was ever credited in any manner to petitioner; and the advances were made over a period of many years as, and in the amount, needed, without any apparent regard for time or repayment or collectibility. Advances made by the sole stockholder of a corporation having insufficient capital for ordinary activities have been held, with other facts, to constitute loans. See ; affd., . The first asset of Locust was acquired at a cost of $40,000, on which there was an outstanding mortgage of $18,000 in 1917. The real estate owned by Hillcrest *107 was carried on a balance sheet at the close of 1937 at a cost of about $16,500, against which there was an outstanding mortgage in the amount of $9,000. It is apparent that petitioner was aware at the time of organizing the corporations that his original investment for capital stock would be insufficient to make the initial purchases of property by the corporations without an immediate advance of funds. Under the method employed to conduct the financial affairs of the corporations, petitioner had no opportunity to recover his advances other than from earnings, for no funds were obtained from any other source and deficits in operation were covered by additional advances made as debts of the corporations were paid by him. Such plan followed by petitioner for operating the corporations is opposed to the idea of loans, within the accepted meaning of the term. One of the objects of forming the corporations was to facilitate conveyance of title to real property upon sale. There is considerable evidence in the record to establish that that was their primary, if not sole, purpose. Their affairs were carried out in such an informal manner that they never had bank accounts or books. Accountants *108 employed to prepare financial statements of the corporations were compelled to obtain the necessary data from checks and bank statements of petitioner, the only source for such information. There was practically no real difference, for tax purposes, between petitioner and his whollyowned corporations, with the result that from a practical standpoint, he was at all times merely making advances to himself, operating through a different entity. See 112 ; , . This personal character of the advances is illustrated by the fact that for at least about the first two years of the existence of Locust, its only property consisted of a dwelling occupied by petitioner as a residence without a rental charge, and he continued to occupy it for another year after the corporation acquired another parcel of residential property in 1918 or 1919. The record does not disclose the amounts advanced by petitioner to Locust prior to 1931. Locust reported indebtedness of $26,225 to petitioner *109 on June 30, 1919. It, therefore, seems apparent that some of the advances here in question were made to pay expenses of operating the premises occupied by petitioner rent free. In any event, no proof was made by petitioner that some of the advances were not used by Locust for that purpose. In addition, Locust made advances of about $6,100 to the Barclay Holding Corporation during the last four years of its existence. The business of that corporation, or the purpose of the advances is not shown in the record. The result is an unusual transaction in which petitioner made advances to a wholly-owned corporation to advance to another one. Considering all of the evidence, we find that the advances in question were not loans, as contended by petitioner. It follows that no error was committed by respondent in treating the amounts as capital investments in stock of the corporations. Decision will be entered for the respondent.